IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MORRIS JORDAN, | ) | CASE NO. 1:11CV0793 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE WELLS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| TIMOTHY BRUNSMAN, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | Doc. No. 18 |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2). Before the court is the petition for a writ of habeas corpus filed by Morris Jordan ("Jordan") pursuant to 28 U.S.C. § 2254 on April 21, 2011. Jordan is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State vs. Jordan*, Case No. CR-07-497993-A (Cuyahoga County 2008). For the reasons set forth below the magistrate judge recommends that the petition be dismissed.

I

The state appellate court reviewing Jordan's direct appeal found the following relevant facts:

> {¶ 2} Appellant was indicted on charges of rape of a minor under the age of ten and kidnapping. Both the rape and kidnapping counts included a sexually violent specification and the rape count included a force specification. The charges alleged that appellant digitally raped his girlfriend's six-year-old daughter. Prior to the start of the jury trial, the court conducted a competency evaluation of the

minor victim and found her competent to testify.

{¶ 3} The following facts were presented at trial.  Appellant lived with the victim, her two-year-old sister, and their mother.  The two girls slept in bunk beds in one bedroom and appellant and the victim's mother slept in another bedroom.  Appellant is the biological father of the two-year-old, but not of the victim.  At the time of the rape, the victim's mother was pregnant with appellant's second child.

{¶ 4} The victim considered appellant to be her father and called him "daddy."  She testified that one night appellant came into her room, pulled down her underwear, and inserted his finger into her "butt."  She said he did this for about two minutes and that the finger hurt going in and coming out.  She said appellant told her it was a secret.

{ 5} The victim's mother testified that she first learned of the incident after the children's babysitter told her she had found an unusual rash on the two-year-old and questioned whether the child had been sexually molested.  The mother asked her older daughter if anyone had touched her and the six-year-old replied, "That's daddy's secret."  The victim told her mother that two nights earlier appellant had "touched her butt."

{¶ 6} The victim's mother took her to Fairview Hospital where she was examined by a Sexual Assault Nurse Examiner ("SANE").  The nurse examined the victim, prepared a rape kit, and collected the victim's clothes.  The victim was wearing the same underwear from the night of the rape, but the shirt and pants were different.  The nurse testified that the victim told her that appellant had touched her in her rectal area.  The victim's physical examination revealed redness in the hymenal area, two abnormal red lines on the vagina, and yellow granulating tissue along the base of the vaginal opening known as the fossa navicularis, all consistent with a penetrating injury to the vagina.

{¶ 7} Experts from the Ohio Bureau of Criminal Identification and Investigation ("BCI") testified to tests conducted on the victim's clothing.  BCI testing indicated the presence of seminal fluid on the crotch of the underpants the victim was wearing on the night of the rape.  Although there was sperm present in the sample taken from the underwear, there was insufficient DNA in the sample for BCI to conclusively link the sample to any one person.

{¶ 8} BCI sent a sample from appellant and a sample from the underwear to the DNA Diagnostic Center, a private laboratory that conducts more specialized DNA testing.  The laboratory conducted a Y-STR analysis, a specialized type of DNA testing used to test the DNA in the Y chromosome in males.  The Y-STR test returned a partial DNA profile which excluded 99.6% of the population, but could not exclude appellant as the source of the semen on the victim's underwear.  Additionally, the testing revealed a unique DNA allele, or genetic marker, in the

semen which matched an identical allele within appellant's DNA.

{¶ 9} Dr. David Bar-Shain of the Alpha Clinic at Metro Hospital testified that he examined and evaluated the victim for sexual abuse approximately one month after the rape. The physical exam was normal. He offered his medical opinion that the injuries noted in the SANE report could only be caused by insertion of a penis, finger, or other object into the victim's vagina.

{¶ 10} The state also submitted into evidence two letters appellant wrote to the victim's mother after the rape. In the letters, appellant apologizes for the pain he caused her and the girls. He acknowledges that he will be going to prison and states it is exactly what he deserves. He tells the victim's mother that she is not to blame for what happened; that it is not her fault.

{¶ 11} The jury found appellant guilty of rape of a minor under the age of ten-years-old and that in committing the offense, appellant compelled the victim to submit by force or threat of force. The jury found appellant not guilty of the kidnapping count and of the sexually violent specifications. The trial court sentenced appellant to life imprisonment without parole and classified him as a Tier III sex offender.

*State v. Jordan*, Slip Copy, 2009 WL 2462702, at *1-*2 (Ohio App. Aug. 13, 2009). The trial court also sentenced Jordan to five years of post-release control.

Jordan timely filed a notice of appeal in the state appellate court. His *pro se* notice of appeal alleged that trial counsel had been ineffective for a variety of reasons, including failure to provide an adequate defense, prepare adequately for trial, challenge the state's case, object to inconsistent witness statements, acknowledge that physical evidence did not corroborate witnesses' statements, file motions to suppress witnesses' testimony, raise Miranda issues, object to the prosecutor's inflammatory statements, inform defendant of the right to discharge the jury, provide defendant with copies of case records, or request a lesser included offense. Jordan also alleged due process violations resulting from threats by the prosecution that he would receive the maximum sentence if his did not accept a plea deal and because the court allowed "court officers

3

including but not limited to the balif [sic], the sheriff and a gentleman pretending to be an inmate, who was later observed in civilian clothes in a civilian part of the building, to continuously, incompassionately create a hostile environment by pressuring Mr. Jordan to take a plea." Notice of Appeal, Answer, Exh. 6, p. 2 (punctuation in the original). A subsequent appellate brief filed by his appellate counsel asserted the following assignments of error:

> I. The trial court committed error when it allowed [the alleged victim] to testify at trial.
>
> II. Appellant's conviction is not supported by the evidence that was presented at trial.
>
> III. The trial court committed error when it failed to instruct the jury on the lesser included offense of gross sexual imposition.
>
> IV. The trial court committed error when it failed to inform appellant at sentencing that he would be subjected to post release control.
>
> V. Appellant was denied his constitutional right to effective assistance of trial counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, section 10 of the Ohio Constitution.

On August 13, 2009, the state appellate court affirmed the judgment of the trial court in all respects except that it found that the trial court had erred in including post-release control as part of Jordan's sentence.[1] The state appellate court, therefore, remanded the case to the trial court to correct the entry of judgment without holding a second sentencing hearing. On October 5, 2009, the trial court amended Jordan's entry of sentence *nunc pro tunc* to vacate the sentence of post-release control. Jordan did not

---

[1] The Ohio Supreme Court later found in another case that it was not error for a court imposing a sentence of life imprisonment to also impose post-release control. *See State ex rel. Carnail v. McCormick*, 126 Ohio St.3d 124, 931 N.E.2d 110 (2010).

file a timely notice of appeal of the state appellate court's judgment to the Ohio Supreme Court.

On June 14, 2008, Jordan filed in the trial court a motion to reduce sentence, on the grounds that he had never been convicted previously, that he had dependent children, and that Ohio disfavors maximum sentences. The trial court denied his motion on July 22, 2008.

On September 12, 2008, Jordan filed a petition for post-conviction relief pursuant to Ohio Rev. Code § 2953.21. In his petition, Jordan alleged ineffective assistance of counsel for failure to move to suppress statements, failure to take a written deposition, and failure to argue the absence of fecal matter in the alleged victim's underwear. The state moved for summary judgment on Jordan's petition. Respondent has been unable to find any indication that the trial court ruled on this motion or otherwise disposed of Jordan's petition.

On November 20, 2009, Jordan filed in the Ohio Supreme Court a notice of appeal. On December 18, 2009, Jordan moved in the Ohio Supreme Court for leave to file a delayed appeal. The Ohio Supreme Court denied Jordan's motion without opinion on February 19, 2010 and dismissed Jordan's appeal.

On January 20, 2011, Jordan filed in the state appellate court a notice of appeal. The court *sua sponte* dismissed his appeal as untimely on January 27, 2011.

Jordan filed his petition for federal habeas relief on April 21, 2011. Jordan asserts five grounds for relief in his petition:

> GROUND ONE: The trial court committed error when it allowed [the alleged victim] to testify at trial.

5

> GROUND TWO:  Appellant's conviction is not supported by the evidence that was presented at trial.
>
> GROUND THREE:  Whether the trial court committed error when it failed to instruct the jury on the lesser included offense of Gross Sexual Imposition.
>
> GROUND FOUR:  The trial court committed error when it failed to inform the defendant at sentencing that he would be subjected to post release control.
>
> GROUND FIVE:  Jordan was denied his constitutional right to effective assistance of trial counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.

On September 23, 2011, respondent filed an Answer/Return of Writ.  Doc. No. 11.  Jordan filed a Traverse on December 22, 2011.  Doc. No. 15.  Respondent filed a Response to the Traverse on January 4, 2012.  Doc. No. 16.  Jordan then filed a brief in reply to respondent's response.  Doc. No. 17.  Respondent moved to strike Jordan's reply.  Doc. No. 18.  The petition is ready for decision.

II

*A.  Jurisdiction*

Jordan was sentenced by the Court of Common Pleas of Cuyahoga County, Ohio.  Jordan filed his writ of habeas corpus in the Northern District of Ohio and raises claims regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  This court has geographic jurisdiction over Jordan's claims.

*B. Statute of Limitations*

Respondent argues that Jordan's petition is barred by the statute of limitations. The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2244, limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of--
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1) ("§ 2244(d)(1)").

The trial court entered judgment against Jordan on May 2, 2008. Jordan filed a timely appeal of his conviction to the state appellate court for direct review. The state appellate court entered judgment against Jordan on August 13, 2009.[2] Jordan had 45 days from the entry of judgment to file a timely appeal of the state appellate court's decision to the Ohio Supreme Court. Ohio S.Ct. Prac. R. II, § 2(A) ("R. II, § 2(A)").

---

[2] The state appellate court ordered the trial court to "correct" its sentence by vacating the reference to post-release supervision. The trial court corrected the entry *nunc pro tunc*. A *nunc pro tunc* entry does not extend the time to file and appeal because it merely clarifies the initial entry and relates back to the time of the filing of the initial entry. *State ex rel. Womack v. Marsh*, 128 Ohio St. 3d 303, 943 N.E.2d 1010 (2011). Consequently, the remand to the trial court to correct sentence had no effect on the running of the statutory period.

Jordan failed to file a timely appeal.

On September 12, 2008, Jordan filed in the trial court a petition for post-conviction relief, alleging ineffective assistance of trial counsel. There is no evidence in the record that the trial court has disposed of this motion.

The statutory period would have begun to run on September 28, 2009, 45 days after the time for filing a timely appeal to the Ohio Supreme Court had elapsed. The statutory period was tolled, however, by Jordan's still-pending petition for post-conviction relief. As Jordan's petition for post-conviction relief remains pending in the trial court, it tolled--and continues to toll--the running of the statutory period. Consequently, the statutory period has not begun to run.

Respondent contends that Jordan's petition for post-conviction relief does not toll the running of the statutory period because it was not "properly filed" within the meaning of § 2244(d)(1). According to respondent, the petition was not properly filed because "the petition was not available to raise his claims and the petition was substantively insufficient." Answer at 11-12. Jordan's claims regarding ineffectiveness of trial counsel were raised or could have been raised on direct appeal. For this reason, respondent argues, those claims were barred by *res judicata* and could not be raised in a petition for post-conviction relief. In addition, respondent continues, the claims did not rely on evidence *dehors* the record. Consequently, they should have been raised on direct appeal, not in a petition for post-conviction relief. Because the claims raised in the petition were not claims permitted in a petition for post-conviction relief, respondent concludes that the petition was not "properly filed," within the meaning of § 2244(d)(1).

Respondent errs. The Supreme Court addressed this very question in *Artuz v.*

8

*Bennett*, 531 U.S. 4 (2000). In that case, the Court wrote in relevant part as follows:

> An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. And an application is "*properly* filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee. . . . But in common usage, the question whether an application has been "properly filed" is quite separate from the question whether the claims *contained in the application* are meritorious and free of procedural bar. . . . By construing "properly filed application" to mean "application raising claims that are not mandatorily procedurally barred," petitioner elides the difference between an "application" and a "claim."

*Id.* at 8-9. Thus, whether Jordan raised claims in his petition for post-conviction relief that were procedurally barred and should not have been raised in that petition is irrelevant to the question of whether the petition was properly filed. There is no suggestion that Jordan's petition was untimely or otherwise failed to meet the *filing* requirements of Ohio Rev. Code § 2953.21. Thus, the court presumes that the petition was properly filed, even if the claims *in* the petition are procedurally barred. Respondent's argument to the contrary is not well-taken.

For the reasons given above, Jordan's petition is not barred by the limitations statute at § 2244(d)(1).

C.   *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings. 28 U.S.C. § 2254(e)(2). There is no need for an evidentiary hearing in the instant case. All of Jordan's claims involve legal issues that can be independently resolved without additional factual inquiry.

9

*D.     Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

10

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted). Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits. 28 U.S.C. § 2254(b)(2).

In the present case, the only state remedy remaining to Jordan is his still-pending petition for post-conviction relief, filed on September 12, 2008. However, "the principle that federal courts should defer to state courts in the interest of comity assumes that the state courts will give prompt consideration to claims of violation of constitutional rights." *Workman v. Tate,* 957 F.2d 1339, 1344 (6th Cir. 1992). Where a "petition for post-conviction relief has languished in state court for more than three years," a petitioner's failure to exhaust may be excused. *Id.* at 1344; *see also Turner v. Bagley*, 401 F.3d 718, 724 (6th Cir. 2005). As the trial court's "inordinate delay in adjudicating" Jordan's petition undercuts the foundation of the exhaustion requirement, *Turner* at 724, Jordan's failure to exhaust should be excused.[3]

*E.     Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice

---

[3] Moreover, there is little point in requiring Jordan to return to the trial court to move for a decision on his petition for post-conviction relief. The claims Jordan raises in his petition are all claims he could have raised on direct appeal. Consequently, they are *res judicata* under Ohio law. *See Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*,  459 U.S. 4 (1982).  Moreover, a failure to present a claim to the highest court in the state deprives a federal court hearing a habeas petition of jurisdiction on that issue.  See  *McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

If the state argues that a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction.  . . . Third, the court must decide whether the state procedural forfeiture is an  "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default  also will be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Respondent contends that Jordan has defaulted all of his grounds for relief. Jordan failed to raise any of his claims timely in the Ohio Supreme Court, raising them

only in a motion for leave to file a delayed appeal.  The Ohio Supreme Court denied him leave to appeal.

Rule II, § 2(A) ("R. II, § 2(A)") requires appellants to file in the Ohio Supreme Court a notice of appeal of a state appellate court judgment within 45 days of the entry of that judgment.  This requirement is an adequate and independent state ground on which Ohio may rely to foreclose habeas relief.  *Smith v. Ohio Dept. of Rehab. & Corr.*, 463 F.3d 426, 431-32, 432 n.3 (6th Cir. 2007).  Raising a claim that should have been raised pursuant to R. II, § 2(A) by filing a motion for a delayed appeal pursuant to  Ohio S. Ct. Prac. R. II, § 2(A)(4)(a) does not cure an appellant's procedural default.  Appellants who have applied for delayed appeal to the Ohio Supreme Court and have received a denial of their application have procedurally defaulted their claims.  *Bonilla v. Hurley*, 370 F.3d 494 (6th Cir. 2004); *see also Smith v. State of Ohio Dept. of Rehabilitation and Corrections*, 463 F.3d 426, 431-32, 432 n.3 (6th Cir. 2006) (holding that a dismissal a motion for delayed appeal is a dismissal on procedural grounds and is an adequate and independent ground upon which Ohio may rely to foreclose habeas review).  Jordan has procedurally defaulted, therefore, all his grounds for relief.

Jordan argues that his presentation of his claims to the state appellate court and his untimely presentation to the Ohio Supreme Court is sufficient to fairly present his claims to the state courts.  Jordan's argument runs squarely counter to long-settled Supreme Court and Sixth Circuit law, as described above.

Jordan fails to demonstrate cause and prejudice for his default or demonstrate that enforcing the default would result in a manifest miscarriage of justice.   Thus, Jordan's grounds for relief should be dismissed as procedurally defaulted.

13

III

For the reasons given above the court should dismiss with prejudice Jordan's petition for a writ of habeas corpus.  Respondent's motion to strike Jordan's reply should be dismissed as moot.


Date:  January 26, 2012                              /s/ *Nancy A. Vecchiarelli*
                                                     United States Magistrate Judge

### **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  See also *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**